# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RAMON SANTIAGO,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>MATTHEW C. KRAMER, Warden<br><br>　　　　　Respondents.<br>_____/ | CV F   05-1283 AWI SMS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Following a jury trial in the Merced County Superior Court, Petitioner was convicted of assault by means of force likely to produce great bodily injury (Cal. Pen. Code[1] § 245(a)(1)) and battery with serious injury (§ 243(d)).  It was further found that Petitioner had suffered a prior serious felony (§ 667(a)(1)).  Petitioner was sentenced to state prison for a total term of thirteen years.  (CT 398-399.)[2]

Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth Appellate District.  (Lodged Doc. No. 1.)  On September 4, 2003, the Fifth District Court of Appeal affirmed the judgment in its entirety.  (Lodged Doc. No. 4.)

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

[2] "CT" refers to the Clerk's Transcript on Appeal; "RT" refers to the Reporter's Transcript on Appeal.

1

On October 15, 2003, Petitioner filed a petition for review with the California Supreme Court. The petition was denied on November 19, 2003. (Lodged Doc. No. 5.)

On October 15, 2004, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The petition was denied on August 24, 2005. (Lodged Doc. No. 6.)

Petitioner filed the instant petition for writ of habeas corpus on September 21, 2005 in the United States District Court for the Eastern District of California, Sacramento Division. The petition was transferred to this Court on October 11, 2005. (Court Doc. 5.)

Respondent filed an answer to the petition on April 19, 2006, and Petitioner filed a traverse on July 20, 2006. (Court Docs. 18, 24.)

## STATEMENT OF FACTS[3]

Jennifer Villa testified that she first met [Petitioner] seven years earlier when both were in the eighth grade. The two shared the same group of friends and had dated on and off in the past. Their relationship became sexual sometime after they graduated from high school. Sometimes they dated exclusively for a couple of months at a time.

On August 19, 2001, Ms. Villa and [Petitioner] were dating each other, but not exclusively. On that date, at about 4:00 p.m., Ms. Villa and Erica Valenzuela went to a party at Arthur Ruiz's home in Atwater. When they arrived, four men, including [Petitioner] and Mr. Ruiz, were in the backyard. Ms. Villa and Ms. Valenzuela sat in the backyard, talking, and Ms. Villa drank beer. Ms. Villa talked to [Petitioner] "a little bit." Ms. Villa noticed [Petitioner] had "hickies" on his neck. Ms. Villa testified that she cared about what she saw, but not to the point that she was going to get mad. [Petitioner] appeared to be mad at her because she was not speaking to him.

While [Petitioner] and Ms. Villa were in the backyard, [Petitioner] pulled his chair next to her, pulled her on his lap by her hair and bit her on the neck. When Ms. Villa's beer, which she was holding, spilled in [Petitioner's] lap, he got up and poured beer all over her hair.

Ms. Villa got up and went inside to the bathroom to wash the beer out of her hair. A few minutes later, [Petitioner] entered the bathroom, shoved Ms. Villa up against the wall and choked her. [Petitioner] told Ms. Villa not to disrespect him in front of his friends. Ms. Villa pushed [Petitioner] off balance, causing him to trip and stumble over the bathtub. Ms. Villa ran out of the bathroom and the house, through the garage. [Petitioner] caught up with Ms. Villa in the garage. He held her by the neck and said "sorry." He did not appear to be angry anymore and finally let her go.

Sometime later that night Ms. Villa walked through the front yard to take out the trash. On the right side of the driveway, she saw [Petitioner] kissing another girl. Ms. Villa did not say anything, but was shocked.

A while later, Ms. Villa left the party with some others and went to visit a

---

[3] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District, Lodged Doc. No. 4. The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

2

friend in Winton. Ms. Villa testified that she wanted to get away from [Petitioner] because of what he did to her. The group only stayed at the friend's house for about five minutes before returning to Mr. Ruiz's home. There, Ms. Villa, Ms. Valenzuela, and Ms. Ruiz sat on the front porch and talked.

[Petitioner] approached Ms. Villa and said, "Get the fuck up. I need to talk to you." He appeared to be angry and drunk. Ms. Villa asked [Petitioner] "What for?" [Petitioner] did not tell her but said he needed to talk to her alone. Ms. Villa did not want to get up, but [Petitioner] repeatedly told her to. When she complied, she and [Petitioner] walked to the driveway. [Petitioner] began to argue with her and hit her once in the cheek with his fist. When Ms. Villa tried to hit him back, [Petitioner] became angrier. [Petitioner] then began hitting Ms. Villa "like [she] was a guy," and threw her to the ground. While Ms. Villa was on the ground, [Petitioner] kicked her and then socked her in the eye with a full swing. Ms. Villa's eye immediately began to swell and she began to see double. [Petitioner] then walked away.

When Ms. Villa arrived home, she took a shower and went to bed. When she woke up the next morning at about 7:00 a.m., she was vomiting. Ms. Villa's mother tried to bandage the cut under her eye. Ms. Villa did not call the police because she was scared [Petitioner] might retaliate. At about 3:00 or 4:00 p.m., Ms. Villa went to the hospital with her sister and some friends. Photographs taken at the hospital showed a half-inch cut under her eye.

After Ms. Villa told the hospital staff what had happened, they contacted the police. Ms. Villa, Ms. Valenzuela, and Ms. Hernandez spoke to Officer Dennis Frank at the hospital. The conversation took place before Ms. Villa received any medical treatment, and she was vomiting at the time. Ms. Villa was too scared to tell Officer Frank everything that happened.

Ms. Villa testified that, at the time of the assault, she was associated with gang members. By the time of trial, Ms. Villa had separated herself from the gang culture and did not want anything to do with [Petitioner] or his friends.

Ms. Villa testified that at some point, Mr. Ruiz and another person approached her and told her not to testify. A short time later, Mr. Ruiz died. On another occasion, in front of one of Ms. Villa's friend's house, a couple of "guys" told the two men with Ms. Villa that she was a "snitch" and they should not "kick" with her. When Ms. Villa entered the courtroom for the first time at [Petitioner's] previous trial, [Petitioner] made a motion to her communicating that he was going to slash her throat.

(Lodged Doc. No. 4, at 2-4.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Merced County Superior Court, which is located within the jurisdiction of this Court.

1   28 U.S.C. § 2254(a); 2241(d).

2   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
3   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
4   enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114
5   F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting
6   Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.
7   1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059
8   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant
9   petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

10  B.      Standard of Review

11  This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
12  custody pursuant to the judgment of a State court only on the ground that he is in custody in
13  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

14  The AEDPA altered the standard of review that a federal habeas court must apply with
15  respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v.
16  Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus
17  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary
18  to, or involved an unreasonable application of, clearly established Federal law, as determined by
19  the Supreme Court of the United States;" or "resulted in a decision that was based on an
20  unreasonable determination of the facts in light of the evidence presented in the State Court
21  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of
22  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.
23  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply
24  because that court concludes in its independent judgment that the relevant state-court decision
25  applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations
26  omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

27  While habeas corpus relief is an important instrument to assure that individuals are
28  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

(1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   Procedural Default

Initially, as to Petitioner's challenge to a violation of his constitutional right to an impartial jury and prosecutorial misconduct claim, Respondent argues that the claims are procedurally barred. Here, the Court of Appeal, on direct review, held that Petitioner had waived both of these claims by failing to object at the trial court level. **(**Lodged Doc. No. 4, at pp. 4, 8-9.**)** Thus, the Court of Appeal applied the contemporaneous objection bar.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989); See also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). In such a case, Petitioner is deemed to have procedurally defaulted his claims. This doctrine of procedural default is based on concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

A claim is procedurally defaulted for federal habeas purposes if the state court relies on state procedural grounds to deny relief. Coleman v. Thompson, 501 U.S. 722, 729 (1991). However, the state court's decision must "clearly and expressly state [ ] that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). If a state court reaches the merits of a federal claim in the alternative, federal review is barred "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." Harris, 489 U.S. at 264 n. 10; see also Loveland v. Hatcher, 231 F.3d 640, 643-44 (9th Cir. 2000). If it is unclear whether the state court invoked a procedural bar or denied the merits of the claim, a federal court

5

1  may review the merits of the claim.  Loveland, 231 F.3d at 643-44; Siripongs v. Calderon, 35
2  F.3d 1308, 1317 (9th Cir.1994).   "A state court's application of a procedural rule is not
3  undermined where . . . the state court simultaneously rejects the merits of the claim."  Bennett v.
4  Mueller, 322 F.3d 573, 580 (9th Cir. 2003).

5        In addition, a federal court may only impose a procedural bar on claims if the procedural
6  rule that the state used to deny relief is "firmly established and regularly followed."  O'Dell v.
7  Thompson, 502 U.S. 995, 998, 112 S.Ct. 618, 620 (1991) (statement of Blackmun joined by
8  Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411,
9  423-24, 111 S.Ct. 850, 857 (1991); James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830,
10 1835-37 (1984); Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States
11 Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.  A federal
12 court may still consider a procedurally defaulted claim if the petitioner can demonstrate (1) cause
13 for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a
14 fundamental miscarriage of justice.  Harris, 489 U.S. at 262.

15       In Bennett, the Ninth Circuit found that California's rule of timeliness is "independent"
16 of federal law for purposes of applying procedural default.  Bennett, 322 F.3d at 581.  Thus, it is
17 necessary to determine whether the procedural rule is "adequate."  To be deemed adequate, the
18 state law ground for decision must be well-established and consistently applied.  Poland v.
19 Stewart, 169 F.3d 573, 577 (9th Cir.1999) ("A state procedural rule constitutes an adequate bar to
20 federal court review if it was 'firmly established and regularly followed' at the time it was applied
21 by the state court."), *quoting* Ford v. Georgia, 498 U.S. 411, 424 (1991).

22       The Ninth Circuit has stated that the ultimate burden of proving the adequacy of the
23 California state bar is upon the State.  Bennett, 322 F.3d at 585-86.  However, the burden shifts to
24 the petitioner to place that defense in issue once the state has adequately pled the existence of an
25 independent and adequate state procedural ground as an affirmative defense.  Id.  Petitioner "may
26 satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the
27 state procedure, including citation to authority demonstrating inconsistent application of the rule.
28 Once having done so, however, the ultimate burden is the state's."  Id.

The Ninth Circuit has held that California's contemporaneous objection rule, which requires objection at the time of trial to preserve an issue for appeal, is an adequate procedural bar.  The contemporaneous objection rule is applied independent of federal law.  See Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999) (recognizing and applying California's contemporaneous objection rule in affirming denial of a federal petition on the ground of procedural default); Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999)("We may not review his six other prosecutorial misconduct claims because Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome); Bonin v. Calderon, 59 F.3d 815, 842-43 (9th Cir. 1995)(sustaining the state court's finding of procedural default where defendant failed to make any objection at trial); Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir. 1988) ("Errors at trial that are not preserved by contemporaneous objection and subsequent appeal to the state supreme court are barred in a collateral habeas corpus review, unless the petitioner can show cause and prejudice"); Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981), reversed on other grounds in Ross v. Oklahoma, 487 U.S. 81 (1988).  California courts have consistently applied the contemporaneous objection rule.  Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002) ("We held more than twenty years ago that the rule is consistently applied when a party has failed to make any objection to the admission of evidence."(citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir. 1981); Vanisckel v. White, 166 F.3d at 957-58; Bonin v. Calderon, 59 F.3d at 842-43.

In this case, Respondent has adequately pled the existence of the procedural bar.  Although the California Court of Appeal, simultaneously addressed the merits of the claims, it independently determined that Petitioner waived the subject claims by failing to object at trial.  Harris, 489 U.S. at 264 n. 10; see also Loveland v. Hatcher, 231 F.3d 640, 643-44 (9th Cir. 2000).  Therefore, the burden is on Petitioner to assert specific factual allegations that demonstrate the inadequacy of this bar.  Petitioner has not done so.  Accordingly, Petitioner's Sixth Amendment challenge to an impartial jury and prosecutorial misconduct claims are procedurally defaulted.  However, even if Petitioner had demonstrated the inadequacy of the bar,

7

for the reasons explained *infra*, there is no merit to Petitioner's claims.

D.      Sentencing Error

Petitioner contends that the United States Supreme Court's decision of Blakely v. Washington, 542 U.S. 296 (2004), applies to his case, because he did not admit the facts supporting his thirteen-year sentence and a jury did not find them true, resulting in a violation of his Sixth Amendment right to trial by jury.  Specifically, Petitioner contends that the doubling of his aggravated term of four years and the consecutive five-year enhancement for a serious offense were not presented to the jury as part of the information, and his sentence should be reduced to four years.

Petitioner presented this claim to the California Supreme Court in the petition for writ of habeas corpus filed October 15, 2004.  (Lodged Doc. No. 6 at 3-3A.)  The petition was denied on August 24, 2005, with citations to People v. Black, 35 Cal.4th 1238 (2005); In re Waltreus, 62 Cal.2d 218 (1965) and In re Dixon, 41 Cal.2d 756 (1953).

The court looks to the last reasoned state court decision as to the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

After the jury found Petitioner guilty of assault and battery and determined that the great bodily injury allegations were not true, Petitioner expressly waived jury trial on the remaining prior conviction allegations.  (RT 732.)  Petitioner elected to try the prior conviction allegation to the court, which found it true beyond a reasonable doubt.  (CT 182; RT 755-757.)

Petitioner's direct review became final on February 17, 2004, when the ninety (90) day period for seeking review in the United States Supreme Court expired.[4]  Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes the period within which one can file a petition for a writ of certiorari in

---

[4] See Sup.Ct. R. 13(1)

the United States Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).

The United States Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004) on June 24, 2004, over four months after Petitioner's direct review became final. Therefore, the issue becomes whether the Supreme Court's ruling in Blakely can be applied retroactively to Petitioner on collateral review.

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." Apprendi v. New Jersey, 530 U.S. at 469.  The Supreme Court reversed, holding that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to jury, and proved beyond a reasonable doubt." Id. at 490. (Emphasis added.)

In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Court explained that the "statutory maximum" for *Apprendi* purposes is the "maximum" sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum " is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." Id. at 303-304.

In both Apprendi and Blakely, state law established an ordinary sentencing range for the crime the defendant was convicted of committing, but allowed the court to impose a sentence in excess of that range if it determined the existence of specified facts not intrinsic to the crime.  In each case the Supreme Court held that a sentence in excess of the ordinary range was unconstitutional because it was based on facts that were not admitted by defendant or found true by the jury beyond a reasonable doubt.

In United States v. Booker, 543 U.S. 220, 125 S. Ct. 788 (2005), the Court applied its holding in Blakely to the Federal Sentencing Guidelines, finding the Guidelines unconstitutional.

In reforming the Guidelines, the Court stated "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." Id. at 233. "For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id.

In People v. Black, 35 Cal. 4th 1238 (June 20, 2005), the California Supreme Court held that California's Determinative Sentencing Law satisfied federal constitutional law as follows: "*Blakely* and *Booker* established a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial fact finding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of fact-finding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense." People v. Black, 35 Cal.4th at 1253. "[I]n operation and effect, the provisions of the California determinate sentence law simply authorize a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." Id. at 1254. The Court held that the "presumptive" midterm does nothing more than establish a "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that which the United States Supreme Court has deemed constitutional. Id. at 1261.

Most recently, in Cunningham v. California, __ U.S. __, 127 S.Ct. 856 (2007), the Supreme Court overruled the holding in Black, and held that the middle term in California's determinate sentencing law was the relevant statutory maximum for the purpose of applying Blakely and Apprendi. Id. at 868. Specifically, the Court held that imposing the upper sentence violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." Id. at 860.

Neither Apprendi, Blakely, or Booker, have been applied retroactively to cases on collateral review. Sanchez-Cervantes, 282 F.3d 664, 666-667 (9th Cir. 2002); Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005); United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005).[5]

Even if Blakely were applicable to Petitioner on collateral review, Petitioner contends only that the trial judge's finding that Petitioner suffered a prior serious felony conviction, exposing him to a sentencing enhancement, violated his Sixth Amendment right to a jury trial. (See Petition, at pp. 6-7; Traverse at pp. 12-13.) This is simply not so. Because the disputed sentence enhancement was based on Petitioner's prior robbery conviction, this finding falls squarely within the exception to the Apprendi rule, excluding any prior conviction. Apprendi, 530 U.S. at 490. As such, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

E.      Unconstitutional Selection of Alternate Juror

Petitioner contends that the trial court's method of selecting an alternate juror violated his constitutional rights.

Petitioner presented this claim to the Fifth District Court of Appeal and the California Supreme Court both by way of petition for review and petition for writ of habeas corpus. (Lodged Doc. Nos. 5, 6.) The California Supreme Court did not issue a reasoned opinion. Therefore, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

---

[5] This being so, it appears highly unlikely that Cunningham would be applied retroactively. See e.g. Fennen v. Nakayema, 494 F.Supp.2d 1148, 2007 WL 1742339 (E.D. Cal., June 14, 2007); Rosales v. Horel, 2007 WL 1852186 (S.D. Cal., June 26, 2007); Salerno v. Schriro, 2007 WL 2153584 (D. Ariz., July 24, 2007).

11

After closing arguments had commenced but prior to deliberation, the Court dismissed one of the jurors who disclosed to the court that she overhead three of the defense witnesses discussing the case. (RT 712-715.) At defense counsel's request, the trial court excused the juror. (RT 717-718.) In determining which of the two alternate jurors would be impaneled, the trial court directed both the prosecutor and defense counsel to write down a number from one to ten on a piece of paper. The court selected a number between one and ten. Because the prosecutor's number was closer to the number chosen by the court, the prosecution was allowed to select which one of the two alternate jurors would be sworn. At no time did defense counsel object to the trial court's selection process.

In denying Petitioner's claim, the Court of Appeal held:

> [Petitioner's] objection to the court's method of selecting an alternate juror comes too late. "Objections to the jury selection process must be made when the selection occurs." (*People v. Johnson* (1993) 6 Cal.4th 1, 23; see also *People v. Caro* (1988) 46 Cal.3d 1035, 1047.) According to the record, it was [Petitioner's] counsel who first requested the juror be excused. [Petitioner's] counsel then agreed to the procedure to select an alternate - - or at least did not object to it - - when it was explained from the bench. Furthermore, [Petitioner's] counsel failed to object at any point during the procedure. However, since [Petitioner] contends in the alternative that he received ineffective assistance of counsel for failure to object to the alternate juror, we address the issue on its merits.
>    . . . . .
> Although we find no case authority in which the method used here to select an alternate juror was used, other selection methods have been discussed and found to pass muster. For instance, in *People v. Davidian* (1937) 20 Cal.App.2d 720, at the commencement of trial, the names of the alternates drawn were designated as alternate No. 1 and alternate No. 2, instead of juror No. 13 and juror No. 14. When a juror needed to be replaced due to illness, alternate No. 1 was chosen. The defendant in *Davidian* objected to the fact that the court did not make another drawing after the original juror was discharged. The court disagreed, finding that section 1089 had been complied with when the court selected the first one of two alternates drawn before the original juror was discharged. (<u>Id</u>. at p. 727.)
> [Petitioner] acknowledges *Davidian*, but claims the method used here was prejudicial because it guaranteed either the defense or the prosecution would gain an advantage by being placed in a position to handpick the 12th juror. However, the substitution of an alternate juror for one of the original jurors does not change the character of the jury. (*People v. Green* (1971) 15 Cal.App.3d 524, 528-529.) Alternate jurors are selected from the same source, in the same manner, with the same qualifications, and are subject to the same challenges as original jurors. (*People v. Johnson*, *supra*, 6 Cal.4th at p. 20.) In *People v. Howard* (1930) 211 Cal. 322, on a record in which the alternate jurors were originally selected in the same manner and proceeding as the first 12 jurors seated, the court stated, "We may assume that the defendant was satisfied that the alternate jurors thus selected would give him the fair and impartial trial to which he was entitled, should either be called in lieu of one of the other jurors." (*Id*. at pp. 324-325.) Furthermore,

> "where an alternate juror, approved by defendant in voir dire, is allowed to deliberate on the jury panel, the defendant bears a heavy burden to demonstrate that he was somehow harmed thereby." (*People v. Hall* (1979) 95 Cal.App.3d 299, 307.)
>
> [Petitioner] contends that the case was very close and the prosecutor gained an unfair advantage by having the last say in the composition of the jury. However, [Petitioner] has a right to a fair and impartial jury, not a right to have a certain person be a juror in his case. (*People v. Moore* (1985) 166 Cal.App.3d 540, 548.) [Petitioner] has not demonstrated that the alternate juror would have voted differently than did the jurors who rendered the verdicts against him. Nor does he claim the alternate juror was incompetent, objectionable, or that the juror did not deliberate properly.
>
> If there was any irregularity in the selection of the alternate juror, it does not appear to have resulted in any prejudice to [Petitioner], nor to have deprived him of any substantial right. In the absence of an adequate showing of prejudice, the judgment will not be disturbed on appeal. No such showing was made here. "Mere unprejudicial irregularities do not justify a reversal." (*People v. Davidian*, supra, 20 Cal.App.2d at p. 727.) Because we reach this conclusion, we need not further address [Petitioner's] argument that defense counsel was ineffective for failing to object to the procedure.

(Lodged Doc. 4, at 5-7.)

The Sixth and Fourteenth Amendments of the United States Constitution guarantee a criminal defendant charged with a felony offense the right to a jury trial. Duncan v. Louisiana, 391 U.S. 145, 149 (1968). The Sixth Amendment ensures that the accused will enjoy the right to an "impartial" jury.

Both state and federal courts have implemented procedures for choosing and replacing jurors. Specifically, the federal courts utilize Federal Rules of Criminal Procedure, Rule 24(c)(2)(B), which states in part:

> Alternate jurors replace jurors in the same sequence in which the alternates were selected.

California courts utilize Penal Code section 1089, which states in part:

> If at any time, whether before or after the final submission of the case to the jury, a juror dies or become ill, or upon other good cause shown to the court is found to be unable to perform his duty . . . the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors.

Any claim that the state court failed to comply with its own procedure for choosing an alternate juror fails to raise a cognizable federal claim under § 2254.

However, even if the claim was not procedurally defaulted, it fails on the merits. First, of

significant note, Petitioner does not claim that he was deprived of the opportunity to voir dire the alternate jurors or that he was prevented from exercising a peremptory challenge against such jurors. Nor does Petitioner claim that either of the jurors were incompetent or in any other way objectionable.

Here, although there may have been an alternative method to choosing the alternate jurors than the one utilized by the trial court in this instance, there is nothing in the record to support Petitioner's claim that the trial court's method of choosing the alternate juror rises to the level of a constitutional violation. Both alternate jurors were selected in the same manner as the twelve other impaneled jurors, and Petitioner exercised no objection. (CT 60.) This dispels Petitioner's notion that one of the alternate jurors was more desirable than the other as both were examined by Petitioner, and were a part of jury panel. Moreover, there is no evidence demonstrating that Petitioner would have necessarily chosen the other alternate juror. In addition, there is simply no evidence that the chosen alternate juror engaged in any misconduct or did not deliberate properly. Lacking any evidence to the contrary, it is presumed that this juror followed the law. Richardson v. Marsh, 481 U.S. 200, 211 (1987); see also Weeks v. Angelone, 528 U.S. 225, 234 (2000). In light of this record, it simply cannot be said that Petitioner was denied the right to an impartial jury trial and there is no showing of constitutional error.

F.    Prosecutorial Misconduct

Petitioner contends that the prosecutor engaged in misconduct during closing argument by stating that defense counsel had fabricated Petitioner's defense and by seeking sympathy for Ms. Villa, Ms. Valenzuela and Ms. Hernandez.

Petitioner presented this claim to the Fifth District Court of Appeal and the California Supreme Court both by way of petition for review and petition for writ of habeas corpus. (Lodged Doc. Nos. 1, 4, 5, 6.) The California Supreme Court did not issue a reasoned opinion. Therefore, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower

court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In rejecting Petitioner's claim, the Court of Appeal held:

> Here, [Petitioner's] trial counsel did not raise any claim of prosecutorial misconduct nor did he request a jury admonition. Because [Petitioner] did not give the trial court an opportunity to correct any abuse inherent in the prosecutor's comment, he cannot raise the issue on appeal. However, we address the issue on the merits as [Petitioner] claims, once again, he received ineffective assistance of counsel for counsel's failure to so object.
> 
> [Petitioner] contends the following statements by the prosecutor were misconduct because they indicated [Petitioner] and his defense counsel fabricated a story. During closing argument, the prosecutor stated:
> 
> "Now, of course, the Defendant's not going to tell you that he hit [Villa]. Why would he? Why would he put people up there that aren't going - - are going to tell you he hit her, too. Come on.
> 
> "Mr. Falasco's got on [sic] obligation here, he got [sic] an obligation to create a defense, that's exactly what has been done here.
> 
> "They have fabricated and put together a story. And he says, why couldn't they get a better - - together a good story.
> 
> "You know, ladies and gentlemen, the reason why is because they don't know what to say. Think - - to think up something.
> 
> "And it wasn't consistent at all. You heard the testimony. They used words - - I mean, you could see how it was fabricated.
> 
> "You could see they said words like sunset, intoxicated, that she threatened everybody. Isn't that just interesting that they all said the same thing.
> 
> "Of course they're going to tell you that. Because that gives him some credibility. That gives a guy who's been convicted of a felony of a crime involving more [sic] turpitude credibility. And he's asking you to give him credibility.
> 
> "He's got a background, ladies and gentlemen, he's a validated gang member."
> 
> . . . . . .
> 
> Here, it does not appear, in context, that the statements referenced above claim defense counsel fabricated a story, but rather that [Petitioner] and his friends, who were witnesses for him, did so. Earlier, in his closing argument, defense counsel repeatedly stated Ms. Villa had "fabricated" her story about being hit in the eye. In addition, defense counsel argued that if [Petitioner] and his friends had fabricated their stories, they would have made up a story that totally exculpated [Petitioner], in other words, "a better story."
> 
> It is generally improper for the prosecutor to accuse defense counsel of fabricating a defense, or to imply that counsel is free to deceive the jury. However, a prosecutor has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account. (*People v. Bemore* (2000) 22 Cal.4th 809, 846.) The purpose of the comments by the prosecutor here did not appear to challenge defense counsel's integrity, but rather to challenge the defense case.
> 
> The prosecutor also stated the following a short time after the comment above, which [Petitioner] claims was misconduct:
> 
> "And yesterday and the days that we've been involved in this trial, you

15

>could see [what Villa's] had to go through.
>   "And you can - - you could see [sic] Erica Valenzuela had to go through. You heard what Lori Hernandez has had to go through to try to get the truth out.
>   "The pain and agony and mental stress and anxiety, and for that you're going to reward him.
>   "You're going to reward him for allowing this story that he tells you that he didn't do it, to that - - to that you're going to reward him. Thank you."
>   It is improper for a prosecutor to appeal to the passion and prejudice of the jury in closing argument during the guilt phase of a trial. (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1250.) In *Pensigner*, the prosecutor had stated, "Suppose instead of being Vickie Melander's kid this had happened to one of your children.'" (*Ibid*.) In *People v. Fields* (1983) 35 Cal.3d 329, the court found prosecutorial misconduct when the prosecutor retold the incident from the murder victim's perspective, and, in essence, asked the jury to "view the case through the eyes of the victim." (*Id*. at p. 362.)
>   Here, the prosecutor's remarks were again made in response to defense counsel's earlier argument. Defense counsel had argued there was no evidence Ms. Valenzuela, Ms. Hernandez or Ms. Villa had been threatened by anyone. The prosecutor's comments reminded the jury of the threats Ms. Villa and the other female witnesses had testified to. The prosecutor had earlier told the jury [Petitioner] and his friends contrived a defense. She then urged the jury not to accept [Petitioner's] version of the facts because doing so would "reward" him for making up a lie."
>   The prosecutor's comments were not misconduct. As such, we need not address [Petitioner's] contention that defense counsel was ineffective for failing to object.

(Lodged Doc. No. 4, at 8-11.)

A simple reference by the prosecution that a certain witnesses testimony is not credible, or may include a lie or fabrication, does not rise to the level of prosecutorial misconduct. See Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc). When a case centers on the issue of the testimony of conflicting witnesses, the prosecutor is entitled to argue that the opposing side is not telling the truth. See United States v. Trevino, 419 F.3d 896, 902 (9th Cir. 2005). In order to determine whether the prosecutor engaged in misconduct during closing argument, the Court must examine the entire record to consider the remarks in context of the proceedings. See United States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . ."); Greer v. Miller, 483 U.S. 756, 765-766 (1987); Williams v. Borg, 139 F.3d 737, 745 (9th Cir. 1998).

The instant case revolved on the veracity of testimony of the conflicting witnesses. The challenged statements were made by the prosecutor in rebuttal argument. As pointed out by the state appellate court, in closing argument, defense counsel argued that Ms. Villa, as well as the

two other prosecution witnesses, were lying and were incredible.  *See* RT 676, 679, 682-685.  The prosecutor's comments in rebuttal were an appropriate response to defense counsel's comments.  Based on the conflicting testimony between the witnesses, it was obviously apparent to the jury that one side was lying.  Thus, the prosecutor simply pointed out the obvious and such statements did not amount to prosecutorial misconduct.  Accordingly, no due process violation occurred, and habeas relief is not warranted.  The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

G.    Sentencing Under California's Three Strikes Law

Petitioner contends that the trial court "failed to apply the clear and convincing evidence standard to his prior(s)" and "the trial court erred . . . in reliance on . . . an [*sic*] copy of an uncertified sentencing abstract."  Petitioner presented this claim to the California Supreme Court in the petition for writ of habeas corpus filed on October 15, 2004.  (Lodged Doc. No. 6, Ground 4.)  The petition was denied on August 24, 2005, with citations to People v. Black, 35 Cal.4th at 1238, In re Waltreus, 62 Cal.2d at 218 and In re Dixon, 41 Cal.2d at 756.

Respondent initially argues that this claim is not cognizable on federal habeas review, and alternatively, Petitioner is mistaken both as to the facts and the law.

In Lackawanna v. Coss, 532 U.S. 394, 401-402 (2001), the Supreme Court held that once a prior state conviction is no longer open to direct or collateral attack in its own right, a defendant "may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained," unless the petitioner was denied counsel in the prior proceeding.  Id. at 404.[6]  Thus, to the extent Petitioner's seeks to challenge the constitutional validity of his prior convictions, such claim is not cognizable and is therefore without merit.

However, even if such claim were cognizable, as Respondent correctly argues, Petitioner's claim is unfounded.  The evidence of a prior conviction is sufficient and satisfies due process if, when it is viewed in the light most favorable to the prosecution, a rational trier of fact could have found the prior conviction to be true beyond a reasonable doubt.  United States v.

---

[6] Justice O'Connor, writing for a plurality of the Court did note an additional exception where "there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own."  Id. at 405.

Okafor, 285 F.3d 842, 847-848 (9th Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Contrary to Petitioner's claim, the trial court did not rely on an uncertified copy of the abstract of his prior conviction.  Rather, at trial, the prosecution submitted a certified copy of numerous documents provided by the Merced County Superior Court and the California Department of Justice to establish Petitioner's 1998 conviction.  *See* CT 183-225.  Furthermore, contrary to Petitioner's claim, the trial court found the 1998 robbery conviction by the highest standard of proof - proof beyond a reasonable doubt.  RT 755-757.  Therefore, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

H.     Trial Court's Refusal to Grant Section 1385 Motion

Petitioner claims the trial court's failure "to grant his motion to dismiss per its discretion prior conviction pursuant to PC 1385" violated his federal constitutional right to due process.

Respondent argues this claim is not cognizable on federal habeas review and, alternatively, lacks any merit.

Petitioner presented this claim to the California Supreme Court in the petition for writ of habeas corpus filed on October 15, 2004.  (Lodged Doc. No. 6, Ground 5.)  The petition was denied on August 24, 2005, with citations to People v. Black, 35 Cal.4th at 1238, In re Waltreus, 62 Cal.2d at 218 and In re Dixon, 41 Cal.2d at 756.

A federal court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  Habeas relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  The misapplication of state law results in a due process violation only if the sentence is arbitrary and capricious.  Richmond v. Lewis, 506 U.S. 40, 50 (1992).  The Ninth Circuit Court of Appeals has refused to consider state law errors in the application of sentencing law.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) (holding petitioner not entitled to habeas relief on claim state court improperly used petitioner's prior federal offense to enhance punishment); Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989) (holding claim that prior conviction was not "serious felony" under California's sentencing law not cognizable in federal

habeas proceeding.)

As Respondent correctly submits, to the extent Petitioner contends that the trial court abused its discretion by failing to strike a prior conviction under California's Romero[7] decision, the claim is not cognizable. This claim is simply a matter of state law, and does not rise to the level of demonstrating fundamental unfairness.

In any event, even if the claim is reviewable, Petitioner has failed to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established Supreme Court authority. In determining whether to exercise its discretion to strike a prior conviction, the trial court heard argument by the parties, reviewed the probation report, and listened to testimony from witnesses on Petitioner's behalf. (CT 367, 380-392, 370-375.) On balance, the court found that the aggravating factors outweighed those in mitigation. (CT 369, 405.) As the record clearly supports the trial court's exercise of discretion and such exercise of discretion was not arbitrary or capricious, Petitioner has failed to demonstrate that the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

---

[7] People v. Superior Court (Romero), 13 Cal.4th 497 (1996).

636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 6, 2007**            /s/ Sandra M. Snyder
                                  UNITED STATES MAGISTRATE JUDGE